JAMES G. HEASLET, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 26828, 29505.   Promulgated May 5, 1931.

*J. Marvin Haynes, Esq.,* and *W. C. Magathan, Esq.,* for the petitioner.
*Arthur Carnduff, Esq.,* for the respondent.

OPINION.

ARUNDELL: The respondent's conclusion from the facts is that the petitioner's business during the taxable year was nothing more than that of a corporate executive. This, we think, is too narrow a construction to be reached from the evidence.

Petitioner entered the automobile industry in its early stages, and until 1919 his activities were, with a few exceptions, limited to engineering and executive positions. Petitioner's connection with the Studebaker Corporation as an officer and stockholder was very profitable, and by 1919 he had accumulated considerable wealth. He then started to design commercial cars with the intention of organizing a corporation to produce cars of his design. Before he had an opportunity to fully carry out such plans, however, financial backers of the Signal Motor Truck Company approached him with a proposition to employ his time and capital in managing and financing the affairs of that corporation. This he did after assuring himself that the company could be placed on a paying basis with additional capital and able management. Concurrently with his investment of $116,000 in securities of the corporation, he was elected its president and general manager. Had the venture been successful, instead of a failure, he would have received a large return on his outlay of money and from his executive position. The failure of the corporation resulted in the loss of his investment and made him liable for liquidated damages.

This is not the case of a man making an investment in securities of a corporation conditioned upon his appointment to a salaried executive position. In 1919 petitioner's knowledge of the automotive industry and financial standing was such that he was in a position where he could invest his capital and employ his time in an enterprise of his own selection. This he did by investing his money and taking the controlling executive position with the Signal Motor Truck Company. The investment and position were directly related, neither being independent of the other. Managing the affairs of the corporation, with the view of obtaining the largest possible return on his investment in its securities, was the principal business of petitioner in and for two years prior to 1921.

In 1921 he became financially interested in another corporation engaged in the production of automobiles, and for a short period acted as its president. After the taxable year petitioner investigated the condition of other like corporations with the intention of becom-

ing financially interested in them if the prospects of success warranted it.

We think the loss sustained in 1921 was suffered in a business regularly carried on by petitioner. *Elmore L. Potter*, 18 B. T. A. 549; *T. I. Crane*, 17 B. T. A. 720; *E. D. Anthony*, 20 B. T. A. 5; *Lawrence J. Montgomery*, 17 B. T. A. 1308. The net loss provisions of the revenue acts are relief provisions and should be liberally construed. *Edgar L. Marston*, 18 B. T. A. 558. The stipulated amount thereof should be carried forward into 1922 and 1923 as a net loss to determine petitioner's income-tax liability for those years.

*Decision will be entered under Rule 50.*